GUSTAVUS A. DAMON & others *vs.* EDWARD CARROL
& another.

Suffolk.    December 11, 1894. — April 5, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Exceptions — Evidence — Question not raised in Court below — Breach of Poor
Debtor's Recognizance — Authority of Magistrate — Declination to submit
to Examination.*

A bill of exceptions, if ambiguous, will be so construed as to raise only the questions raised and passed upon in the Superior Court. ·

Evidence not admissible if objected to, when admitted without objection has its natural probative effect.

The due authority of one acting *de facto* in an official capacity may be inferred when there is no evidence that he has usurped his office.

After a poor debtor has invoked the protection of Pub. Sts. c. 162, § 38, and agreed to submit to an examination, he cannot, without a breach of his recognizance, when he appears at the place and time and before the court which he has selected, decline to submit to such examination because the court has refused his request for a continuance, and the facts that the court thereafter proceeded to refuse to administer the oath and ordered the clerk to affix to the execution a certificate authorizing the commitment of the debtor, and that the execution was not produced, are immaterial.

CONTRACT, upon a poor debtor's recognizance, entered into by Edward C. Mitchell, Jr., as principal, and Edward Carrol·as surety.

At the trial in the Superior Court, before *Bond*, J., the jury returned a verdict for the plaintiffs in the amount of the recognizance, and interest from the date of the writ; and the defendants alleged exceptions. The facts appear in the opinion.

*H. Dunham*, ( *W. E. Cassidy* with him,) for the defendants.

*S. L. Whipple*, ( *R. W. Frost* with him,) for the plaintiffs.

BARKER, J.    The bill of exceptions purports to state all the evidence. It consisted of original documents, a duly verified copy of the record of the Municipal Court of the Dorchester District, of oral testimony that the debtor, his attorney, and the creditor's attorney left the court-room fifteen or twenty minutes after the order authorizing the commitment of the debtor, and of the testimony of the clerk of the court that no mittimus was made out by him. This testimony of the clerk was the only

evidence objected to. No exception was saved to its admission; but the court, after refusing to rule that upon the evidence the plaintiffs could not maintain the action, stated that all questions of law which might be raised on the evidence were open to the defendants, and then said that it should instruct the jury that, if they believed the evidence offered, they should find for the plaintiffs. There was a verdict for the plaintiffs, and the case is here upon the defendants' exception to the refusal of the ruling that upon the evidence the plaintiffs could not maintain the action, and to the ruling that, if the jury believed the evidence offered, they should find for the plaintiffs. The bill of exceptions states also that " the pleadings may be referred to, and the copy of the recognizance referred to in the declaration was not annexed, and no copy of the same was produced at the trial other than Exhibit C, and there was no agreement that Exhibit C was to be treated as a copy."

The defendants now contend, (1.) that there was not in the declaration " any recognizance set forth as should be done by copy of record, as in *Commonwealth* v. *Cutter*, 98 Mass. 31, 33 "; (2.) that the evidence was not sufficient to support an action, " because no record of any magistrate was introduced in evidence, nor did any magistrate testify to any record " ; (3.) that the certificate of the magistrate that the defendants did recognize in due form was " competent evidence only in case the extended record had not been made, which was not shown to be the case "; (4.) that " in an action for breach of a recognizance the mere production of the magistrate's memoranda and proof of his signature and official station does not make out a *prima facie* case for the plaintiff " ; (5.) that " it was necessary also to prove the authority of the magistrate to take the recognizance " ; and (6.) that " even if there was any recognizance no breach had been committed by the debtor."

The bill of exceptions is ambiguous, and receives different interpretations by different justices of this court. After the statement that the court refused to rule that upon the evidence the plaintiffs could not maintain the action, the bill recites that " the court stated that all questions of law which might be raised on the evidence above were open to said defendants." One construction of this sentence is, that among the questions of

law which were to be open were the competency and the admissibility of the evidence. But a majority of the court are of opinion that, as no objection was made to the admission of any evidence except the testimony that no mittimus was made out, and as no exception was saved to the admission of evidence, and as no request was made for a ruling that the evidence was not competent to prove any fact or facts stated in any of the documents which were put in, the statement that " all questions of law which might be raised 'on the evidence above were open " should be construed to mean all questions of law upon the evidence as evidence before the jury; that is to say, all questions as to its probative effect and value. The admissibility of evidence depends so much upon preliminary proof and upon discretion, that a majority of this court are unable to give to the bill of exceptions a construction under which the admissibility of the evidence can be argued here when it does not appear to have been raised and passed upon below. The only question of admissibility there raised was as to the testimony that the clerk of the court had not made out a mittimus. There was in this testimony no contradiction of the record ; it was simply to a negative, and was immaterial upon the question whether there was a breach of the recognizance.

We consider the grounds urged in support of the contention that the action cannot be maintained.

1. The first is that no recognizance was set forth in the declaration by copy of record. This, if true in fact, is not now open, because the question was not raised or passed upon in the Superior Court.

2. The second is that the evidence was not sufficient, because no record of any magistrate was introduced, nor did any magistrate testify to any record. In the opinion of a majority of the court this is untenable. The execution was in evidence, and indorsed upon it were the officer's original return, the affidavit, jurat, and court certificate authorizing the debtor's arrest, and an original certificate signed by the commissioner of insolvency before whom the declaration alleged the recognizance to have been made. The officer's return states that on April 27, 1892, he arrested the debtor by virtue of the execution, " and had him before Henry Austin, Esq., a commissioner of insolvency within

and for the county of Suffolk, before whom he recognized with surety for thirty days (see magistrate's certificate annexed)." The certificate of the commissioner of insolvency, which in the bill of exceptions is called Exhibit C, is as follows:

"Henry Austin, 5 Tremont St., Boston. Commonwealth of Massachusetts. County of Suffolk, ss. April 27, 1892. I certify that E. C. Mitchell, Jr., the debtor named in the annexed execution, having been arrested and now held in custody by virtue of said execution by John B. Fitzpatrick, deputy sheriff, is before me to recognize with surety for his appearance before some court having jurisdiction to examine him as a poor debtor, and as provided in chapter 419, Acts of the year 1888, and chapter 162 of the Public Statutes; and said debtor did then and there recognize in due form, with Edward Carrol, of Boston, county of Suffolk, in the sum of $220.95, that within thirty days from this day he would appear before said court for said examination, first giving notice to the creditor of his intention so to do, as required by law. Henry Austin, Commissioner of Insolvency."

Here are two original statements, each made and signed by a sworn official, which state the circumstances necessary to enable the jury to find that the debtor recognized with the defendant Carrol as surety as alleged in the declaration. The return, read with the execution and the certificate to which it refers, and the certificate of the commissioner read with the execution to which it also refers, state enough, if their statements are believed, to justify the finding of every fact necessary to maintain the action, if a breach of the recognizance is otherwise proved. These original statements were in evidence, and the question is as to their probative value, and not whether they or either of them were competent or admissible to prove the making of the recognizance.

The question is not exactly the same as if the magistrate before whom such a recognizance had been entered into had died before extending his record; or as if the original record, no copy remaining, had been destroyed. There, if the making of the recognizance is to be proved, it must be otherwise than by the record or by copy. Here there is no allegation or proof that there was no record. It seems that such recogni-

zances are nowhere explicitly required by statute to be made matters of record; nor are they required by statute to be returned to any court. Actions upon them are actions of contract, and not by writ of *scire facias*. But it is assumed by our decisions that such recognizances will be recorded by the magistrate before whom they are entered into, and the rights of the surety, at least, are not otherwise secured to him; for it would seem that he cannot surrender his principal unless he delivers to the jailer a copy of the record of the recognizance. Pub. Sts. c. 162, § 63; c. 163, §§ 12–31, particularly § 16. Assuming that it is the duty of the magistrate to make a record of the recognizance, and that, upon the issue whether such a recognizance has been entered into, any other evidence than the record or a duly attested copy of it would be incompetent if objected to; and assuming also, that, if evidence competent for some other purpose is admitted for that other purpose, its effect must upon request be limited to the purpose for which it is competent, the question for decision is, What should the jury do with the two original statements which were in evidence? In the opinion of a majority of the court the answer is, that, if the jury believed the statements to be true, they should make from them the reasonable necessary inferences of other facts, and with the facts explicitly stated and necessarily inferred they should find a verdict for the plaintiff. It is the ordinary case of something less than the best evidence, but of evidence admitted and to be dealt with by the jury. The return was the statement of a sworn officer, and the commissioner's certificate, although not required by statute to be indorsed upon the execution, was also a statement of a sworn officer, and no statute forbade him to put it upon the execution. Papers signed by trustworthy persons, if put in evidence before a jury, naturally tend, although not competent if objected to, to induce belief of the matters contained in them. Hearsay evidence usually is rejected because it lacks the corroboration of an oath or affirmation, and not because it has no natural tendency to induce belief. When hearsay evidence is incompetent, the reason for its exclusion is the same in principle as that which formerly excluded testimony from interested witnesses. It was thought that the effect of interest made it unsafe to consider the testimony of such

witnesses, just as the lack of an oath makes it unsafe to consider hearsay evidence. But it was always held that, if testimony incompetent by reason of the interest of a witness was allowed to go before the jury, they might consider it as they would any other testimony. *Heely* v. *Barnes*, 4 Denio, 73. *Donelson* v. *Taylor*, 8 Pick. 390. 1 Greenl. Ev. § 421, and cases cited in notes, § 423, note 5. *Flagg* v. *Mann*, 2 Sumn. 486, 510. Hearsay evidence is treated by Bentham as in the nature of secondary evidence. See Wharton, Ev. §§ 170, 172. It is admitted in Scotland. Upon some questions hearsay is competent evidence everywhere, as in questions of age and of pedigree. In the case at bar the certificate and the return tend to show that the recognizance declared on was made, as the record of the Dorchester Municipal Court tends to show the matters there stated as facts.

3. The third ground, that the magistrate's certificate was not competent because it was not shown that there was not an extended record of the recognizance, is disposed of by the construction given to the bill of exceptions by the majority of the court, that the question of competency is not open.

4. It is no doubt true, that in an action for breach of recognizance the mere production of the magistrate's memoranda and proof of his signature and official station does not make out a *prima facie* case for the plaintiff. It is of course necessary that there should be some proof of a breach of the recognizance; and there was such proof in the case at bar. The production of the memorandum of the recognizance did not make a *prima facie* case in *Blake* v. *Mahan*, 2 Allen, 75, because in that case there was no proof of the breach of the recognizance.

5. The defendants contend that it was necessary to prove the authority of the magistrate who took the recognizance. The evidence showed that he was acting *de facto* as a commissioner of insolvency, and his due authority might be properly inferred in the absence of evidence that his authority was usurped. In *Petersilea* v. *Stone*, 119 Mass. 465, there was some evidence to show that the constable had no right to the office. See also *Coolidge* v. *Brigham*, 1 Allen, 333.

6. The remaining contention, we are all of opinion, is unsound. It proceeds upon a misconception of the respective

rights of judgment creditors and judgment debtors when a debtor arrested upon execution is released from arrest upon a recognizance on condition that he shall deliver himself up for examination.

It is true that, when the debtor left the court-room, the court had declined to administer the oath and had ordered its clerk to affix to the execution a certificate to authorize the debtor's commitment. The debtor was at the place where his recognizance, if he had not already broken it, required him to be; and it was the duty of the plaintiffs, if the debtor had up to that time performed the conditions of the recognizance, and if they intended to have him committed, to see that an officer with the execution should be present when the certificate was ready to be affixed. If when the court was ready to affix its certificate an officer was not present with the execution, the debtor would not be required to wait, and might depart without thereby making a breach of the recognizance. *Jacot* v. *Wyatt*, 10 Gray, 236, 240. *Peck* v. *Emery*, 1 Allen, 463, 465. *Russell* v. *Goodrich*, 8 Allen, 150. *Lothrop* v. *Bailey*, 14 Allen, 514. *Goodall* v. *Myrick*, 111 Mass. 484. *Fuller* v. *Meehan*, 118 Mass. 135. But the debtor's recognizance required him to deliver himself up for examination. This means the examination provided by Pub. Sts. c. 162, § 38, for a judgment debtor arrested upon execution who has given notice that he desires to take the oath for the relief of poor debtors. When a debtor procures such a notice to be served, the creditor thereby acquires the right to examine the debtor in the mode and with the results pointed out by that section; that is to say, the right to have the magistrate examine the debtor on oath concerning his estate and effects, the disposal thereof, and his ability to pay the debt for which he is arrested; and the creditor may propose to the debtor any interrogatory pertinent to the inquiry, and may require the examination to be in writing, in which case it shall be signed and sworn to by the debtor and preserved. See Pub. Sts. c. 162, § 38. These rights, which the debtor by invoking the statutes has conferred upon the creditor, may bring disclosures which may enable him to satisfy his judgment. After having invoked the protection of the statutes and agreed to submit to such an examination, the debtor cannot, without a breach of his recognizance, when

he appears at the place and time and before the court which
he has selected, decline to submit to an examination. *Simpson*
v. *Trivett*, 120 Mass. 147. After the debtor's request for a con-
tinuance on September 10 had been refused, he declined to
submit to an examination. This was a breach of the recogni-
zance, after which the court had no authority to order his ar-
rest ; and the facts that the court thereafter proceeded to refuse
to administer the oath, and ordered the clerk to affix to the exe-
cution a certificate authorizing the commitment of the debtor,
and that the execution was not produced, are all immaterial.
*Simpson* v. *Trivett, ubi supra. Morgan* v. *Curley*, 142 Mass. 107.
The breach was complete when the debtor declined to submit to
an examination, and the subsequent proceedings were not only
unnecessary, but beyond the power of the court. *Morgan* v. *Cur-
ley*, and *Fuller* v. *Meehan, ubi supra.* It does not appear that the
further proceedings were asked for by the plaintiffs, and they are
not estopped from insisting on the breach which the debtor had
previously made. See *Vinal* v. *Tuttle*, 144 Mass. 14, and cases
cited. The only remedy open to the creditor after the debtor
declined to submit to an examination was this action for a
breach of the recognizance. The amount of the verdict is not in
dispute, and the exceptions must be overruled.

*Exceptions overruled.*